IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-04052-01-CR-C-BCW |
| | ) | |
| JOHN RENFRO, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pending before the Court is defendant John Renfro's Motion to Quash Search Warrant and Suppress Evidence (Doc. 51) and suggestions in support thereof (Doc. 52). The Government has filed suggestions in opposition (Doc. 57) to which the defendant filed a reply (Doc. 62). For the reasons that follow, it is recommended that Defendant's motion be denied.

### I. Background

On April 24, 2018, Detective Mark Fitzgerald of the Columbia Police Department (CPD) applied for a warrant to search Mr. Renfro's residence located at 5700 N. Autumn Drive in Columbia, Missouri, for evidence of drug distribution. (Doc. 51-1). In support of his application, Det. Fitzgerald submitted an affidavit that outlined the basis for probable cause and issuance of the warrant. *Id.* The affidavit includes information regarding Mr. Renfro from four confidential sources, documented surveillance of Mr. Renfro's residence, observation of an alleged narcotics transaction, and the fruits of a traffic stop performed on Mr. Renfro's vehicle. *Id.* The Honorable Michael A. Bradly of the Circuit Court of Boone County, Missouri, found probable cause existed and issued the warrant. (Doc. 51-2). CPD officers executed the search warrant that same day. (Doc. 51-3). The fruits of that search lead to a twelve-count indictment in which Mr. Renfro is charged with one count of Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. § 846, one count of Possession with the Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1), nine counts of Use of a Communications Facility to Facilitate a Drug

Trafficking Conspiracy in violation of 21 U.S.C. § 843(b), and one count of Carrying a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 30). Mr. Renfro now moves the Court for an order suppressing evidence of methamphetamine distribution which was found during the execution of the warrant on April 24, 2018.

The Court held an evidentiary hearing regarding the motion to suppress on December 10, 2018. Mr. Renfro was represented by Attorney Clark L. Jones. The Government was represented by Assistant United States Attorney Mike Oliver. The Government called Detective Mark Fitzgerald as a witness. The Defense called no witnesses to testify.

## II.    **Findings of Fact**

On the basis of the evidence presented at the evidentiary hearings, the undersigned submits the following proposed findings of fact.

1. Det. Mark Fitzgerald had been a detective in the CPD's Vice, Narcotics, and Organized Crime Unit for two years. (Tr. at 4:16-18, December 10, 2018).
2. Prior to becoming a detective, Fitzgerald worked for CPD in various capacities such as patrol officer, training officer, and part-time member of the Special Weapons and Tactics Team for a total of five years. (Tr. at 4:6-16, December 10, 2018).
3. Det. Fitzgerald has authored approximately one-hundred affidavits in support of an application for a search warrant during the last two years as a detective. (Tr. at 5:2-15, December 10, 2018).
4. In December of 2017, CPD detectives received information from an anonymous citizen (Confidential Informant #1 or CI #1) that an individual named John Renfro was a large scale marijuana distributor. (Tr. 25:18-25 – 26:1-2, December 10, 2018; Gov't Exhibit No. 1). Subsequently, CPD opened a full investigation into Mr. Renfro whose residential address is listed as 5700 North Autumn Drive in Columbia, Missouri, in the CPD Records System. (Gov't Exhibit No. 1).
5. An informant with the Bureau of Alcohol, Tobacco and Firearms (Confidential Informant #2 or CI #2) informed CPD that he witnessed Mr. Renfro with a large amount of marijuana in the rear of his Cadillac Escalade in Columbia, Missouri, sometime in December of 2017. (Tr. 23:3-15; 26:24-25 – 27:1-8, December 10, 2018; Gov't Exhibit

Case 2:18-cr-04052-BCW   Document 63   Filed 12/26/18   Page 2 of 10

No. 1). CI #2 has a history of providing accurate information and identified Mr. Renfro in a picture. (Tr. 26:3-10, December 10, 2018; Gov't Exhibit No. 1).

6. Det. Fitzgerald observed a Cadillac Escalade parked in the driveway of 5700 N. Autumn Drive while conducting surveillance of the residence. (Gov't Exhibit No. 1). CPD officers were also able to confirm that defendant Mr. Renfro has a Cadillac Escalade registered to his name. *Id.*

7. Sometime between April 14, 2018, and April 24, 2018, a confidential source (Confidential Informant #3 or CI #3) who has a history of providing accurate information identified Mr. Renfro in a Facebook picture and directly told Det. Fitzgerald that he or she purchased marijuana and methamphetamine from him. (Tr. 27:10-21, December 10, 2018; Gov't Exhibit No. 1). CI #3 stated that the subject identified as Mr. Renfro lived in the Clearview subdivision. *Id.* CPD officers confirmed that the Clearview subdivision encompasses defendant Renfro's residential address of 5700 N. Autumn Drive. *Id.*

8. During a Federal proffer interview on April 18, 2018, Detective Sedgewick of CPD learned that John Renfro received 250 pounds of marijuana at the beginning of February 2018. (Tr. 23:16-22; 27:22-25, December 10, 2018; Gov't Exhibit No. 1). The subject of the proffer interview (Confidential Informant #4 or CI #4) described Mr. Renfro's address as 5700 N. Autumn Drive. (Gov't Exhibit No. 1).

9. CPD detectives conducted surveillance of 5700 N. Autumn Drive on April 16, 2018, April 17, 2018, April 20, 2018, and April 24, 2018. *Id.* Detectives observed Mr. Renfro enter and exit the residence numerous times. *Id.*

10. On April 24, 2018 at approximately 2:06 p.m., Det. Fitzgerald was conducting surveillance of Mr. Renfro's residence. (Tr. 7:18-22, December 10, 2018; Gov't Exhibit No. 1). Det. Fitzgerald observed Mr. Renfro arrive to 5700 N. Autumn Drive in a black Cadillac sedan, walk towards the front door, and then re-enter the Cadillac approximately two minutes later before driving off. (Tr. 7:21-25 – 8:1-11, December 10, 2018; Gov't Exhibit No. 1). Detectives followed Mr. Renfro to a nearby Taco Bell where they saw an unknown white male quickly enter and exit Mr. Renfro's vehicle while he was in the drive-through. (Gov't Exhibit No. 1).

11. Det. Fitzgerald believed that he observed a narcotics transaction at Taco Bell based on how the white male entered the vehicle, the brevity of the interaction, and the location of Mr. Renfro's vehicle in the drive-through. (Tr. 24:9-20, December 10, 2018; Gov't Exhibit No. 1).

12. After defendant Mr. Renfro left Taco Bell, detectives conducted a traffic stop due to the suspected drug transaction and a tint violation. (Gov't Exhibit No. 1). Officers searched Mr. Renfro's vehicle and recovered $9,600.00 in U.S. currency and a Smith & Wesson handgun. (Tr. 24:17-25, December 10, 2018; Gov't Exhibit No. 1).

13. Sgt. Hedrick of CPD and his canine partner assisted with the traffic stop. (Gov't Exhibit No. 1). The canine partner alerted to the presence of controlled substances within Mr. Renfro's vehicle. *Id.*

14. Based on the aforementioned investigation, Det. Fitzgerald authored an affidavit in support of a search warrant of Mr. Renfro's residence on April 24, 2018. The same day he witnessed the alleged drug transaction at Taco Bell. (Tr. 5:13-24, December 10, 2018; Gov't Exhibit No. 1). Det. Fitzgerald only included information that he thought would established probable case in the affidavit. *Id.*

15. Det. Fitzgerald's sergeant, lieutenant, and deputy chief approved the affidavit and accompanying search warrant application before sending it to Boone County Prosecutor Stephanie Morrell for review. (Tr. 9:20-25 – 10:1-23, December 10, 2018).

16. After Prosecutor Morrell reviewed and approved the affidavit and search warrant application, it was sent to Judge Michael Bradley who found probable cause and issued the warrant at 5:49 p.m. on April 24, 2018. (Tr. 11:3-17, December 10, 2018; Gov't Exhibit No. 1).

17. Pursuant to the authority of the warrant issued by Judge Michael Bradley, CPD executed a search of 5700 N. Autumn Drive on April 24, 2018, at 6:43 p.m., and recovered the following:
    a. Two cellular phones
    b. Smith and Wesson M&P 9mm handgun
    c. Ammunition
    d. Ruger 380 automatic handgun
    e. Miniature baggies

f. Metal grinders

   g. Pill bottle containing marijuana

   h. Rock powder cocaine

   i. Heroin (Tr. 12:3-6, December 10, 2018; Gov't Exhibit No. 2).

### III. Discussion

In his motion to suppress, Mr. Renfro challenges the constitutionality of the search of the residence at 5700 N. Autumn Drive in Columbia, Missouri, and seeks to suppress the fruits of that search. Mr. Renfro argues that Det. Fitzgerald's affidavit fails to provide probable cause that evidence of drug distribution would be found in Mr. Renfro's residence at the time the warrant was issued. Specifically, Mr. Renfro argues that Det. Fitzgerald primarily relied on statements from confidential informants, and those statements should have been excluded from the court's determination of probable cause.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As made clear in the Fourth Amendment, however, the Constitution does not forbid all searches and seizures, but only unreasonable searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222 (1960). In many search and seizure scenarios – particularly where a residence is involved – the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant after finding probable cause. Probable cause exists where there "is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Mohammed Ahmed Kattaria*, 553 F.3d 1171, 1175 (8th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Whether a search warrant is supported by probable cause is determined by the totality of the circumstances, and resolution of the question by an issuing judge "should be paid great deference by reviewing courts." *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (internal citations omitted). "When the issuing judge relies solely upon the supporting affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Ethridge*, 165 F.3d 655, 656 (8th Cir. 1999) (quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)).

Case 2:18-cr-04052-BCW   Document 63   Filed 12/26/18   Page 5 of 10

### a. *CPD's Use of Confidential Informants Was Proper.*

Mr. Renfro first argues that Det. Fitzgerald's affidavit failed to sufficiently allege the reliability of the information provided by CI #'s 1-4, and therefore their statements should have been excluded from the court's probable cause determination.

The statements of reliable confidential informants are themselves sufficient to support probable cause for a search warrant. *See United States v. Pressley*, 978 F.2d 1026, 1027 (8th Cir. 1992). Reliability of a confidential informant is established if the person has a history of providing law enforcement officials with truthful information. *See United States v. Williams,* 10 F.3d 590, 593 (8th Cir. 1993). Additionally, when the information an informant provides is "at least partially corroborated, attacks upon credibility and reliability are not crucial to the finding of probable cause." *United States v. Humphreys*, 982 F.2d 254, 258-59 (8th Cir. 1992).

Mr. Renfro's argument concerning the reliability of confidential informants is unpersuasive. This argument completely disregards Det. Fitzgerald's statement in his affidavit that both CI #2 and CI #3 have a "history of providing truthful and accurate information." (Doc. 51-1). As such, suppression on the basis of CI #2 and #3's unreliability is unwarranted.

Mr. Renfro's argument also fails to acknowledge CPD's efforts to corroborate the information provided by the confidential informants to ensure their reliability. After CI #1 reported that John Renfro was a "large scale marijuana dealer," CPD opened a full investigation to explore the allegation in December of 2017. (Doc. 51-1). When CI #2 reported that "in December of 2017, he/she observed Renfro with a large amount of marijuana in the rear of his (Renfro's) Cadillac Escalade," the Columbia Police Department confirmed that Renfro drove a Cadillac Escalade by reviewing vehicle registration records and conducting surveillance of his home. *Id.* When CI #3 stated that a man identified as John Renfro lived in the Clearview Subdivision and sold large quantities of marijuana and methamphetamine, CPD confirmed that the Clearview Subdivision encompasses Mr. Renfro's residential address of 5700 N. Autumn Drive, Columbia, Missouri. *Id.* On April 18, 2018, CI #4 described Mr. Renfro's residential address and CPD cross-referenced his description with the location of 5700 N. Autumn Drive to find it was a match. *Id.* Each and every one of the confidential informants' statements were at least partially corroborated by law enforcement, and therefore concerns regarding their reliability are not dispositive on the finding of probable cause to issue the warrant. *See Humphreys*, 982 F.2d at 258-59.

Additionally, Mr. Renfro suggests that the confidential informants' statements are unreasonably vague and do not sufficiently set forth the basis for their knowledge. To illustrate his point, Mr. Renfro compared the amount of detail provided by the confidential informants in this case to an anonymous letter submitted to the Bloomingdale, Illinois, Police Department in *Illinois v. Gates*. 462 U.S. 213 (1983). In *Gates,* the anonymous letter included statements that a husband and wife were engaged in selling drugs; that the wife would drive their car to Florida on [that same day] to be loaded with drugs, and the husband would fly to the location to drive the car back; that the car's trunk would be loaded with drugs; and the couple had over $100,000.00 worth of drugs in their basement. *Id.* at 213. After police undertook efforts to corroborate aspects of the anonymous letter, they applied for a search warrant of the couple's home and vehicle which was granted by an Illinois trial judge. *Id.* at 226. The United States Supreme Court ultimately held that probable cause existed because law enforcement corroborated the allegations contained in the anonymous letter. *Id.* at 215.

Mr. Renfro argues that the confidential informants in the present case should have conveyed more details similar to the anonymous letter in *Gates,* and that CPD should have made efforts to corroborate the information tantamount to the Bloomingdale Police Department. However, Mr. Renfro's comparison of *Gates* to the present case misses the mark. In *Gates,* the primary take-away is the "value of corroboration of details of an informant's tip by independent police work," which is exactly what happened in the instant case. *Id.* at 241. Therefore, this Court deems the confidential informants' statements as sufficiently reliable to warrant the finding of probable cause.

Mr. Renfro further claims the affidavit lacked information that directly ties his residence at 5700 N. Autumn Drive to suspected drug distribution. Specifically, he states that

> [t]he only time illegal drugs were ever personally observed in Defendant's possession was in December 2017 in the parking lot of a restaurant. At no time did any of confidential informant ever observe contraband at Defendant's residence nor could one logically infer the same given the facts set forth in Det. Fitzgerald's affidavit.

(Doc. 52). However, search warrant applications and affidavits "should be read with common sense and not in a grudging, hyper technical fashion." *Walden v. Carmack,* 156 F.3d 861, 870 (8th Cir. 1998). A law enforcement officer's common sense and experience informs him or her that drug distributors often utilize their residential homes as the headquarters for their operation.

Additionally, CI #3 and CI #4 provided details regarding the location of Mr. Renfro's residential home in connection with information regarding the sale of marijuana and methamphetamine. And CPD detectives observed Mr. Renfro leave his residence immediately before conducting an alleged drug transaction at a nearby Taco Bell. Based on these factors, common sense suggests that there was probable cause to believe Mr. Renfro's home located at 5700 N. Autumn Drive contained evidence of drug distribution.

### b. *Information Contained in the Affidavit Was Timely.*

Next, Mr. Renfro suggests that the information contained in Det. Fitzgerald's affidavit was stale at the time the warrant was issued and executed on April 24, 2018. In his affidavit, Det. Fitzgerald states that CI #2 observed Mr. Renfro with a large amount of marijuana in December of 2017, approximately four months before the warrant was issued. (Doc. 51-1). Additionally, CI #4 stated that Mr. Renfro received two-hundred and fifty pounds of marijuana in February, approximately two months before the warrant was issued. *Id.* Given the time lapse, Mr. Renfro argues the affidavit lacked sufficient information that drug distribution evidence would be found at 5700 N. Autumn Drive at the time the warrant was issued.

"There is no bright-line test for determining when information is stale . . . [and t]ime factors must be examined in the context of a specific case and the nature of the crime under investigation." *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007) (quoting *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)). In the present case, to label the affidavit in its entirety as stale is to completely abandon the "totality of the circumstances" approach courts are required to employ.

On April 24, 2018, the same day the warrant was issued and executed, CPD detectives witnessed Mr. Renfro leave his residence and complete what they believed to be a narcotics transaction in the drive-through of a Taco Bell in Columbia, Missouri. (Doc. 51-1). After Mr. Renfro exited the parking lot, a traffic stop was conducted and his vehicle was searched shortly after 2:00 p.m. *Id.* Officers recovered $9,600.00 in US currency and a Smith and Wesson M&P handgun. *Id.* Both cash and firearms are known to be prevalent in the distribution of narcotics. Judge Michael Bradley issued the warrant at 5:49 p.m. and it was executed at 6:43 p.m. Given the prior statements of confidential informants, surveillance of an alleged drug transaction, and the recovery of physical evidence indicating continued drug distribution approximately four hours

before the warrant was executed, the affidavit can hardly be viewed as stale under the totality of the circumstances.

This Court finds that the underlying search warrant is not defective, thus it need not delve too deeply into the applicability of the "good-faith exception" outlined in *United States v. Leon*. 468 U.S. 897 (1984). However, even if this Court found that sufficient probable cause did not exist to issue the warrant to search 5700 N. Autumn Drive on April 24, 2018, it does believe that the CPD officers acted in good-faith reliance on the search warrant issued by Judge Michael Bradley. The good-faith exception would accordingly preclude suppression. *Id.* at 919.

In sum, the Court concludes that Det. Fitzgerald's affidavit included sufficient probable cause that Mr. Renfro was selling drugs from his residence. To that end, the affidavit contained the following information:

(1) In December 2017, CPD detectives received information from CI #1 that Mr. Renfro was a large scale marijuana distributor,

(2) CI #2's, who has a history of providing reliable information, statement that he/she observed Mr. Renfro with a large quantity of marijuana in the back of his Cadillac Escalade,

(3) CPD detectives' discovery that Mr. Renfro has a Cadillac Escalade registered to his name and officers observed a Cadillac Escalade parked in the driveway of the residence at 5700 N. Autumn Drive,

(4) CI #3's, who also has a history of providing reliable information, statement a person identified as John Renfro who lives in the Clearview Subdivision sells large quantities of marijuana and methamphetamine,

(5) CPD detectives' confirmation that the Clearwater Subdivision encompasses 5700 N. Autumn Drive,

(6) CI #4's statement on April 18, 2018 that Mr. Renfro received two hundred and fifty pounds of marijuana in February. CI #4 also described Mr. Renfro's address at 5700 N. Autumn Drive,

(7) Surveillance conducted on April 16, 2018, April 17, 2018, April 20, 2018, and April 24, 2018 where CPD detectives observed Mr. Renfro go in and out of his residence multiple times,

(8) Surveillance conducted on April 24, 2018 where Det. Fitzgerald observed Mr. Renfro leave 5700 N. Autumn Drive and conduct an alleged drug transaction in the drive-through of Taco Bell, and

(9) A traffic stop conducted on Mr. Renfro's vehicle on April 24, 2018 during which $9,600 in US currency and a Smith and Wesson handgun were recovered by CPD Officers. A CPD canine partner also responded to the traffic stop and alerted to the presence of narcotics within the vehicle although none were physically recovered.

Taken together, this information established probable cause that Mr. Renfro was selling illegal drugs so as to permit Judge Michael Bradley of the Circuit Court of Boone County to issue a warrant to search 5700 N. Autumn Drive in Columbia, Missouri.

## IV.    Conclusion

For the reasons stated above, the Court concludes that Mr. Renfro's contentions regarding suppression of evidence in this case are without merit, and the Motion to Quash Search Warrant and to Suppress Evidence should be denied.

Accordingly, IT IS THEREFORE RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order DENYING defendant John Renfro's motion to suppress. (Doc. 51).

Counsel are reminded that each has fourteen (14) days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 26th day of December, 2018, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
United States Magistrate Judge